UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FELIX ANTONIO DAVIS III,

     Petitioner,

v.

MICHAEL BURGESS,

     Respondent.

_____/

Case No. 2:23-cv-11532

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS (ECF No. 1); DENYING MOTIONS FOR APPOINTMENT OF
COUNSEL (ECF No. 7), TO EXPAND RECORD (ECF No. 8), AND FOR
EVIDENTIARY HEARING (ECF No. 9); DECLINING TO ISSUE
CERTIFICATE OF APPEALABILITY; AND DENYING PETITIONER
LEAVE TO APPEAL *IN FORMA PAUPERIS***

Petitioner Felix Davis, confined at the Oaks Correctional Facility in Manistee,

Michigan, seeks the issuance of a writ of habeas corpus under 28 U.S.C. § 2254. In

his *pro se* application, Petitioner challenges his conviction for three counts of first-

degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b; one count of

second-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520c; one count

of assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS

§ 750.84, one count of felon in possession of a firearm, MICH. COMP. LAWS §

750.224f, and one count of possession of a firearm in the commission of a felony,

MICH. COMP. LAWS § 750.227b. For the reasons stated below, the application for a writ of habeas corpus is denied.

# I. BACKGROUND

Petitioner was convicted following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review under 28 U.S.C. § 2254(e)(1), *see Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant found the victim's profile on a social media website and contacted her. Defendant and the victim agreed to "chill" and smoke marijuana together. Defendant picked up the victim and drove her to his home. When the victim first arrived, she was not feeling well, so she took a nap. When she woke up, defendant asked if he could pay her for sex. The victim declined. Defendant then raped the victim three times. He also punched her in the face, pulled out her weave, and temporarily locked her in the basement. The victim escaped after defendant left her alone when he went to answer the door. The victim ran to a gas station, and individuals there called the police. Four months after the incident, the police found and arrested defendant. Defendant was then charged, convicted, and sentenced.

*People v. Davis*, No. 345792, 2020 WL 2501709, at *1 (Mich. Ct. App. May 14, 2020) (per curiam), *appeal denied,* 949 N.W.2d 712 (Mich. 2020).

In addition to the victim's testimony, the prosecution presented testimony that Petitioner had been convicted of the statutory rape of a minor victim:

> At trial, MG testified that in 2008, when she was a minor, she lived with defendant. At that time, defendant was a pimp, and would use other minor children who lived with him as prostitutes. Although defendant used MG as a police lookout instead of a prostitute, MG described a sexual encounter with defendant. MG told defendant to stop, but

defendant refused and continued to have sex with MG. MG also testified to an instance where defendant physically assaulted her after MG spent the night at another man's home. When MG returned to defendant's home, defendant ran outside with a gun and yelled at the man. Defendant locked MG out of the house, but MG was able to find a way inside. Later that night, defendant smacked MG, locked her in a closet for an unknown length of time, and pulled MG's hair. MG also testified that she had seen defendant with a gun on other occasions.

*Id.* at *5.

Petitioner's conviction was affirmed on appeal. *Id.*

Petitioner filed a postconviction motion for relief from judgment with the trial court, which was denied. *People v. Davis*, No. 18-003417-FC (Wayne Cty. Cir. Ct. Nov. 4, 2021); ECF No. 12-16 at PageID.1409–19. Both the Michigan Court of Appeals and the Michigan Supreme Court denied Petitioner leave to appeal. *People v. Davis*, No. 361156 (Mich. Ct. App. Aug. 18, 2022) (ECF No. 12-21 at PageID.1741), *appeal denied,* 985 N.W.2d 518 (Mich. 2023) (mem.) (ECF No. 12-23 at PageID.1960).

Petitioner seeks a writ of habeas corpus on the following grounds: (1) Petitioner was denied his Sixth Amendment right to self-representation, (2) Petitioner was denied the effective assistance of trial counsel, (3) Petitioner was denied the effective assistance of appellate counsel, (4) Petitioner was denied a fair trial by the admission of prior bad-acts evidence, and (5) Petitioner was denied a fair trial because of prosecutorial misconduct. *See* ECF No. 1 at PageID.19.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state-court decision is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on

a question of law or if the state court decides a case differently than the Supreme

Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S.

362, 405 (2000). An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's

case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that

court concludes in its independent judgment that the relevant state-court decision

applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "A

state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Petitioner raised his first, second, third, and fifth claims in his postconviction motion for relief from judgment. ECF No. 12-16 at PageID.1410–11. In reviewing a claim under AEDPA, this Court must give deference to "the last state court to issue a reasoned opinion on the issue." *Hoffner v. Bradshaw*, 622 F.3d 487, 505 (6th Cir. 2010) (quoting *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005). The Michigan Court of Appeals and the Michigan Supreme Court both denied petitioner's postconviction application for leave to appeal in unexplained one-sentence orders. *See* ECF Nos. 12-21 at PageID.1741; 12-23 at PageID.1960.

Accordingly, this Court must "look through" these decisions to the Wayne County Circuit Court opinion denying the motion for relief from judgment, which was the last state court to issue a reasoned opinion. *Hoffner*, 622 F.3d at 505. Then this Court can decide whether that court's adjudication of Petitioner's first, second, third, and fifth claims was "contrary to," or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See Hamilton v. Jackson*, 416 F. App'x 501, 505 (6th Cir. 2011).

## III. ANALYSIS

### A. Motions for Counsel and Evidentiary Hearing

Petitioner filed motions for appointment of counsel and for an evidentiary hearing. ECF Nos. 7; 9.

There is no constitutional right to counsel in habeas proceedings. *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (citing *McCleskey v. Zant¸* 499 U.S. 467, 495 (1987)). As discussed below, Petitioner's claims lack merit. Thus, this Court will deny Petitioner's request for the appointment of counsel, *see Lemeshko v. Wrona*, 325 F. Supp. 2d 778, 788 (E.D. Mich. 2004).

Because his claims lack merit, Petitioner is also not entitled to an evidentiary hearing. *See Stanford v. Parker*, 266 F.3d 442, 459–60 (6th Cir. 2001).

### B. Motion to Expand Record

Petitioner moved to expand the record to include evidence that he filed a grievance against his second appellate attorney for failing to timely file his *pro per* supplemental brief on appeal with the Michigan Court of Appeals, which led to her suspension from practicing law for 90 days. ECF No. 8 at PageID.217.

Under Rule 7(a) of the Rules Governing § 2254 Cases, if a habeas petition is not summarily dismissed, then the district court "may direct the parties to expand the record by submitting additional materials relating to the petition." This is one of several measures that courts may use in habeas cases "to avoid the need for an

evidentiary hearing." *Blackledge v. Allison*, 431 U.S. 63, 81–82 (1977). The decision to expand a habeas record is within the sound discretion of the district court. *See West v. Bell*, 550 F.3d 542, 551 (6th Cir. 2008).

However, as discussed below, Petitioner fails to state a claim as to his ineffective assistance of appellate counsel claim. *See* Part III.E., *infra*. Despite the limited factual record, any expansion of the record would not change this Court's ruling as to this claim. As such, the motion to expand the record will be denied.

### C. Claim 1: Self-Representation

Petitioner first argues he was denied his right to self-representation. Petitioner claims that he requested to represent himself at a pretrial conference on August 8, 2018, at a second pretrial conference on August 24, 2018, and on the first day of trial, August 27, 2018. ECF No. 1 at PageID.29.

Petitioner's claim was rejected by the trial court on postconviction review:

The defendant alleges that the trial court erred when it ignored his request to proceed pro se after the court denied his request for a new attorney. At a pretrial hearing on August 8, 2018, the defendant complained about his trial attorney and alleged that he withheld evidence from him, which he quickly retracted when the court questioned him. He alleged that he didn't trust his attorney and wouldn't go to trial with him. The attorney stated that the defendant was insisting that he file motions that were legally untenable and frivolous. The trial court noted that it was less than 3 weeks until the trial and the defendant had not mentioned any problems with his attorney before that point. The defendant alleges that when he told the court, 'So, I can stand on my own now,' he was asserting his right to represented himself at trial.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The defendant did not express that he wanted to represent himself at trial when he made a vague statement about 'standing on his own.'

At the next pretrial hearing the defendant again complained about his attorney and alleged that his attorney wasn't representing him. The defendant swore at the court and stated that he wasn't going to participate in his trial. The defendant left the courtroom before the hearing was completed after telling the court that he wanted to leave. At no time did he express a desire to represent himself at trial.

On the morning of trial the defense attorney told the court that the defendant wanted to represent himself. The defendant refused to come out of the holding cell to the courtroom and refused to go to the room that had been set up with a camera for him to watch the proceedings. The trial court found that the defendant had purposely absented himself from the trial by his disruptive conduct. The court noted that the defendant had previously behaved disrespectfully and had sworn at the court. The court's deputy testified that the defendant told him that he intended to make a scene at his trial and that he wasn't going to trial. The defendant's right to represent himself was forfeited by his disruptive conduct and his statements that he wasn't going to go to trial. At no time did the defendant make an unequivocal statement that he wanted to represent himself. This claim has no merit.

ECF No. 12-16 at PageID.1411–12.

Criminal defendants have a constitutional right to conduct their own defense at trial if they voluntarily and intelligently elect to do so. *Martinez v. Court of Appeal of California, Fourth App. Dist.*, 528 U.S. 152, 154 (2000); *Faretta v. California*, 422 U.S. 806, 807 (1975). However, the right to self-representation is not absolute. *Martinez*, 528 U.S. at 161.

Moreover, a defendant's request for self-representation must be made clearly and unequivocally. *See Faretta*, 422 U.S. at 835; *see also United States v. Martin,*

25 F.3d 293, 295 (6th Cir. 1994) ("To assert the right of self-representation, a defendant must do so unequivocally.") (citing *Hamilton v. Vasquez*, 17 F.3d 1149 (9th Cir. 1994), *abrogated on other grounds by Calderon v. Coleman*, 525 U.S. 141 (1998)).

Finally, a defendant's invocation of his right of self-representation must be timely made. *See Moore v. Haviland*, 531 F.3d 393, 403 (6th Cir. 2008). "Courts will balance any such assertion [of the right of self-representation] against considerations of judicial delay." *United States v. Martin*, 25 F.3d at 295–96 (footnote omitted). Although "*Faretta* did not establish a bright-line rule for timeliness," it "necessarily incorporate[d] a loose timing element." *Hill v. Curtin*, 792 F.3d 670, 678 (6th Cir. 2015). The Sixth Circuit noted that "to the extent that *Faretta* addresses timeliness, as a matter of clearly established law it can only be read to require a court to grant a self-representation request when the request occurs weeks before trial." *Id.*

Petitioner is not entitled to habeas relief on his self-representation claim for several reasons.

*The First Pretrial Conference*. Petitioner's statement at the pre-trial hearing on August 8, 2018, "so I can stand on my own now?" was not a sufficient invocation of the right to self-representation. Rather, petitioner made a "single, off-the-cuff remark" at his pretrial conference, which was not clear and unequivocal for purposes

of the Sixth Amendment right to self-representation. *United States v. Manthey*, 92 F. App'x 291, 295 (6th Cir. 2004).

*The Second Pretrial Conference*. Petitioner claims he again invoked his right to self-representation at the pre-trial conference on August 24, 2018, when he informed the judge, during a discussion about possible plea offers, that counsel "does not speak for me. He doesn't represent me, he doesn't speak [o]n my behalf or for me." ECF Nos. 1 at PageID.35; 12-9 at PageID.580. Petitioner then went on to complain about counsel, indicating that that the attorney-client relationship had fallen apart. ECF No. 12-9 at PageID.580–82. This too does not constitute a clear and unequivocal invocation of the right to self-representation because in the context that it was made, Petitioner "was motivated less by a desire to engage in self-representation and more by extreme dissatisfaction with" counsel. *United States v. Jackson*, 304 F. App'x 424, 428 (6th Cir. 2008).

Moreover, any request by Petitioner to represent himself only three days before trial would be untimely.  *Hill*, 792 F.3d at 678.

*The First Day of Trial*. Finally, any request by Petitioner to represent himself on the morning of trial was properly rejected as untimely. "A trial judge may fairly infer on the day of trial—as the jurors are on their way to the courtroom—that a defendant's last-minute decision to represent himself would cause delay, whether or not the defendant requests a continuance." *Hill*, 792 F.3d at 681; *see also Robards*

*v. Rees*, 789 F.2d 379, 383–84 (6th Cir. 1986) (holding that state trial court properly denied motion for self-representation because it was made the first day of trial and after the clerk had called roll of jurors, and so it "would have impermissibly delayed the commencement of the trial").

The trial judge, both at trial and on postconviction review, reasonably concluded that Petitioner waived his right to self-representation both through his disruptive conduct, including leaving the courtroom, at the second pretrial conference, and his initial refusal to enter the courtroom on the first day of trial.

Although a criminal defendant has a right to conduct his own defense, he must be "able and willing to abide by rules of procedure and courtroom protocol." *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984). Indeed, a "trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta*, 422 U.S. at 834 n.46 (citing *Illinois v. Allen*, 397 U.S. 337 (1970)). Further, "[t]he right of self-representation is not a license to abuse the dignity of the courtroom. Neither is it a license not to comply with relevant rules of procedural and substantive law." *Id.*

At the second pre-trial conference on August 24, 2018, the trial judge put on the record that he had been made aware that Petitioner "is going to make a scene, or may make a scene if this goes to trial." ECF No. 12-9, PageID.579. The judge warned Petitioner that if he engaged in disruptive behavior, he would be removed

from the courtroom and have to watch the trial remotely from another room. *Id.* at PageID.579. The judge warned Petitioner not to "make a scene" or "there will be consequences." *Id.* at PageID.580. During the pretrial conference, Petitioner continued using profanity and repeatedly interrupted the judge before leaving the courtroom. *Id.* at PageID.581–83. After Petitioner left the courtroom, the judge placed on the record that Petitioner had been disrespectful and had sworn at the court before leaving. *Id.* at PageID.583–84. The judge concluded that Petitioner's actions confirmed that he intended to make a scene at his upcoming trial. *Id.*

On the first day of trial, Petitioner initially refused to come into the courtroom. ECF No. 12-10 at PageID.590. A courtroom deputy informed the judge that Petitioner indicated that as long as he was represented by his current lawyer, he refused to leave the lock-up and come into the courtroom, nor would he agree to watch the trial remotely from another room. *Id.* at PageID.590–91. Although trial counsel informed the judge that Petitioner said he wished to represent himself, *id.* at PageID.591, the courtroom deputy indicated that when he asked Petitioner if he wanted to represent himself, Petitioner only replied that he did not want to be represented by his current attorney. *Id.* at PageID.600. The judge specifically ruled

that Petitioner waived his right to self-representation by being disruptive. *Id.* at PageID.595–96.[1]

Because Petitioner disrupted the proceedings and engaged in erratic behavior, the trial court did not abuse its discretion in denying Petitioner's request for self-representation. *See Lewis v. Robinson*, 67 F. App'x 914, 919 (6th Cir. 2003). Moreover, contrary to Petitioner's argument, the judge had no duty to warn Petitioner that disruptive behavior would result in his right being forfeited. *See Ainsworth v. Virga*, No. CV 10-6602, 2012 WL 7984098, at *9 (C.D. Cal. Aug. 13, 2012) (noting that court had no obligation to warn petitioner not to misbehave before denying his *Faretta* motion), *report and recommendation adopted*, No. CV 10-6602, 2013 WL 1707918 (C.D. Cal. Apr. 19, 2013).

Finally, the judge reasonably concluded that by removing himself from the second pretrial conference and by initially refusing to come to court for the beginning of trial, Petitioner forfeited his right to self-representation. There is no clearly established federal law holding otherwise. *See Kammeraad v. Campbell*, No. 1:16-cv-00349, 2017 WL 5036751, at *9–11 (W.D. Mich. Aug. 29, 2017), *report and recommendation adopted by* 2017 WL 4962769, at *1 (W.D. Mich. Nov. 1, 2017) (holding that determination that defendant forfeited his right to self-

---

[1] Petitioner eventually did agree to come into the courtroom and participated in the trial. ECF No. 12-10, PageID.700–01. Moreover, Petitioner testified in his own defense. ECF 12-13, PageID.1212–80.

representation due to "severity of his misconduct and his absolute refusal to participate in any manner in the proceedings" was not contrary to or an unreasonable application of clearly established federal law).

Accordingly, Petitioner is not entitled to habeas relief on his first claim.

### D. Claim 2: Ineffective Assistance of Trial Counsel

Petitioner next claims he was denied the effective assistance of counsel because his trial attorney failed to effectively impeach the victim with her preliminary examination testimony. ECF No. 1 at PageID.42.

For ineffective assistance of counsel, Petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-pronged test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.

The trial judge denied Petitioner's claim on postconviction review as follows:

The defendant alleges that his trial counsel should have impeached the victim with the differences between her trial testimony and her preliminary examination testimony regarding in what room she was raped twice. The defendant alleges the victim lied when she testified that the defendant raped her twice in the bedroom at the preliminary exam but then testified at trial that he raped her twice in the bathroom. The defendant testified that he had sex with the victim in the bedroom, bathroom and the kitchen. The fact that the victim's memory of the

events was not perfectly clear is not evidence of falsehood. As noted
previously, the victim stated she was trying to forget what had
happened to her. The trial counsel effectively cross examined the victim
to highlight the differences in her testimony before the jury. The
defendant has not shown that his attorney was performing below an
objective standard of reasonableness or that there is a reasonable
probability that, but for counsel's alleged errors, the result of the
proceedings would have been different. There is no merit to this claim.

ECF No. 12-16 at PageID.1418.

Impeachment strategy falls within the category of an attorney's tactical

decisions, which are difficult to attack. *Tackett v. Trierweiler*, 956 F.3d 358, 374

(6th Cir. 2020) (citing *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994) and

*Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002)). Here, defense counsel's

performance did not constitute ineffective assistance of counsel because the record

shows that he carefully cross-examined the victim and in his closing argument

emphasized the weaknesses in her testimony. *See Krist v. Foltz*, 804 F.2d 944, 948–

49 (6th Cir. 1986); *Millender v. Adams*, 187 F. Supp. 2d 852, 872 (E.D. Mich. 2002).

During cross-examination, counsel challenged the victim's memory of the

events. He confronted the victim about her ability to recall the time between the three

attacks and where they occurred in Petitioner's home. ECF No. 12-11 at

PageID.898–907. Counsel also confronted the victim with her prior preliminary

examination. ECF No. 12-11 at PageID.902–904. Defense counsel further elicited

testimony from the victim that her trial testimony contradicted her statement to

police as well as her testimony at the preliminary examination. *Id.* at PageID.913–

21. In closing, defense counsel highlighted inconsistencies in her testimony and prior statements. ECF No. 12-13 at PageID.1325–1331.

Although counsel "could have further probed the inconsistencies highlighted by" Petitioner, "his failure to do so in light of the otherwise extensive cross-examination does not undermine the presumption that his 'conduct falls within the wide range of reasonable professional assistance.'" *Moss v. Olson*, 699 F. App'x 477, 487 (6th Cir. 2017) (quoting *Strickland*, 466 U.S. at 689). Finally, Petitioner has failed to identify how additional impeachment of the victim would have affected the jury's decision. Defense counsel did not perform ineffectively just because he did not more forcefully cross-examine the victim, particularly when the effect of further probing is entirely speculative on Petitioner's part. *See Jackson v. Bradshaw*, 681 F.3d 753, 764–65 (6th Cir. 2012); *Moss v. Hofbauer*, 286 F.3d 851, 864 (6th Cir. 2002) ("Although other attorneys might have reached a different conclusion about the value of cross-examining [the victim] in greater detail, counsel's strategic choice not to further cross-examine the victim was 'within the wide range of reasonable professional assistance.'" (quoting *Strickland*, 466 U.S. at 689)). Petitioner therefore is not entitled to relief on his second claim.

## E. Claim 3: Ineffective Assistance of Appellate Counsel

Petitioner next contends that he was denied the effective assistance of appellate counsel because his second appellate counsel failed to timely file

Petitioner's *pro se* supplemental Standard 4 brief with the Michigan Court of Appeals.[2] ECF No. 1 at PageID.56. It is this claim for which he filed his Motion to Expand the Record. ECF No. 8; *see* Discussion *supra* Part III.B.

However, this claim also fails because represented criminal defendants do not have a right to file *pro se* appellate briefs. Under the Sixth Amendment, a criminal defendant has no right to self-representation on direct appeal from a criminal conviction. *Martinez v. Court of Appeal of California, Fourth App. Dist.*, 528 U.S. 152, 163 (2000). The Supreme Court also rejected the idea that the right to self-representation on appeal could be grounded in the Due Process Clause of the Fourteenth Amendment, because "[u]nder the practices that prevail in the Nation today . . . we are entirely unpersuaded that the risk of either disloyalty or suspicion of disloyalty is a sufficient concern to conclude that a constitutional right of self-representation is a necessary component of a fair appellate proceeding." *Id.* at 161.

Thus, there is no constitutional entitlement to submit a *pro se* appellate brief on direct appeal from a criminal conviction in addition to a brief submitted by appellate counsel. *See McMeans v. Brigano*, 228 F.3d 674, 684 (6th Cir. 2000). By accepting the assistance of counsel, the criminal appellant waives his right to present

---

[2] Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry*, 636 F. Supp. 2d 574, 594 n. 6 (E.D. Mich. 2008).

*pro se* briefs on direct appeal. *Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir. 1996);

*see also Henderson v. Collins*, 101 F. Supp. 2d 866, 881 (S.D. Ohio 1999) (defendant

who was represented by counsel and also sought to submit *pro se* brief upon appeal

did not have right to such hybrid representation), *aff'd in part, vacated in part on

other grounds*, 262 F.3d 615 (6th Cir. 2001). Any failure by appellate counsel to

timely submit a *pro se* brief on behalf of Petitioner does not present a constitutional

question that entitling him to relief. *McMeans*, 228 F.3d at 684. Accordingly, his

third claim fails.

### F. Claim 4: Prior Bad-Acts Evidence

Petitioner next contends that he was denied a fair trial by the admission of

prejudicial evidence concerning his prior conduct for statutory rape, pimping, child

sex trafficking, and drug dealing. ECF No. 1 at PageID.63. Petitioner argues that this

evidence was admitted in violation of Michigan Evidence Rule 404(b) because it

was admitted solely to establish that Petitioner was a bad man with a propensity to

commit crimes.

It is "not the province of a federal habeas court to reexamine state-court

determinations on state-court law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-

68 (1991). A federal court is limited in federal habeas review to deciding whether a

state court conviction violates the Constitution, laws, or treaties of the United States.

*Id.* Thus, errors in the application of state law, especially rulings regarding the

- 18 -

admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988)).

Accordingly, Petitioner's claim that the state court Rule 404(b) or any other provision of state law by admitting improper character evidence or evidence of prior bad acts is non-cognizable on habeas review. *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Estelle*, 502 U.S. at 72 (recognizing that reversal of state-court conviction would be impermissible when based on belief that state trial judge erred in ruling as to bad-acts evidence). The admission of this "prior bad acts" or "other acts" evidence against Petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court precedent which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). Petitioner is not entitled to relief on his fourth claim.

## G. Claim 5: Prosecutorial Misconduct

Last, Petitioner contends he was denied a fair trial because of prosecutorial misconduct. ECF No. 1 at PageID.82.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments

violate a defendant's constitutional rights only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly*, 416 U.S. at 643–45. To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Petitioner first alleges that the prosecutor permitted the victim to commit perjury. ECF No. 1 at PageID.25, 82, 84.

Presenting known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). Further, there is a due-process violation when prosecutors allow false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

To prevail on a claim that his conviction was obtained by evidence that the government knew or should have known to be false, Petitioner must show that (1)

the statements were actually false, (2) the statements were material, and (3) the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998) (quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989)). However, a habeas petitioner must show that a witness's statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d 486, 517–18 (6th Cir. 2000).

Petitioner claims that the victim perjured herself because she changed her story between her initial statement to the police, her preliminary examination testimony, and her testimony at trial concerning the number of times she was sexually assaulted in the bathroom and the number of times she was sexually assaulted in the bedroom. ECF No. 1 at PageID.84–88.

However, mere inconsistencies in a witness's testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F.3d at 343 (quoting *Lochmondy*, 890 F.2d at 822). The fact that a witness contradicts himself or changes his story does not establish perjury either. *Malcum v. Burt*, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003) (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)). Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence. *See Barnett v. United States*, 439 F.2d 801,

802 (6th Cir. 1971). Petitioner has presented no evidence to establish that the victim deliberately lied. Therefore, he is not entitled to relief on this claim.

Petitioner next contends that the prosecutor misrepresented the evidence by stating in her closing argument that petitioner admitted during his testimony to possessing a firearm when he had not, in fact, made such an admission. ECF No. 1 at PageID.91.

When a prosecutor misrepresents facts in evidence, that may be substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000) (quoting *Donnelly*, 416 U.S. at 646). Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F.3d at 535 (quoting *United States v. Wiedyk*, 71 F.3d 602, 610 (6th Cir. 1995)). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.* (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996).

The trial judge, in rejecting this claim on postconviction review, concluded that the prosecutor may have misspoken when she stated that Petitioner admitted at trial to holding a gun, but found it nonprejudicial because the victim at trial testified that Petitioner took a gun out of his dresser drawer and sat with it on his lap. *People v. Davis,* No. 18-003417-FC, at 7–8 (ECF No. 12-16 at PageID.1415–16). The judge

also noted that although Petitioner stated that the victim brought the gun to his house, he admitted at trial that he told the victim she wasn't getting her gun *back* because he believed she stole some money from Petitioner. *Id.* The judge observed that Petitioner's own testimony showed that he intended to keep the gun and thus supported his firearms convictions under a constructive possession theory. *Id.*

Under Michigan law, possession of a firearm may be either actual or constructive. *See Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007) (citing *People v. Hill*, 446 N.W.2d 140, 143 (Mich. 1989)). The Sixth Circuit indicated that "[c]onstructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Id.* at 449 (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir. 1973) (alteration in original), *abrogated on other grounds by Scarborough v. United States*, 431 U.S. 563 (1977)).

Although Petitioner did not testify to holding the gun, he did testify that he told the victim that he intended to keep her gun, which supported his firearms convictions under a constructive-possession theory. ECF No. 12-13 at PageID.1224. Because there was at least some factual support on the record for the prosecutor's statement, the prosecutor's remarks did not deprive Petitioner of a fair trial. *See United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008).

- 23 -

Petitioner next contends that the prosecutor committed misconduct by introducing MG's testimony concerning Petitioner's prior statutory rape conviction and his prior activities of child sex trafficking and drug dealing. ECF No. 1 at PageID.97.

Although Federal Evidence Rule 404(b) and its state counterpart generally prohibit prosecutors from questioning defendants about prior bad acts, the Supreme Court has never held that the federal constitution forbids prosecutors from doing so. Thus, the rejection of Petitioner's prosecutorial misconduct claim by the Michigan courts would not entitle Petitioner to habeas relief. *See Wagner v. Klee*, 620 F. App'x 375, 378 (6th Cir. 2015).

Petitioner lastly claims that the prosecutor improperly vouched for the victim in her closing argument with the following remarks: "You could think [the victim], maybe she did agree to sex with him, but I think she said no, and I think he had sex with her anyways. You can believe that." *See* ECF No. 1 at PageID.19; ECF No. 13 at PageID.2105; ECF No. 12-13 at PageID.1338.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocate's role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell*

- 24 -

*v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999) (citations omitted), *abrogated on other grounds by Mackey v. Dutton*, 217 F.3d 399 (6th Cir. 2000). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.* The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness's credibility. *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987) (quoting *United States v. Dennis*, 786 F.2d 1029, 1046 (11th Cir. 1986)). "Generally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis*, 170 F.3d 546, 550 (6th Cir. 1999) (internal citations omitted).

Nonetheless, "[p]rosecutorial vouching rarely warrants a new trial." *Smith v. Jones*, 326 F. App'x 324, 328 (6th Cir. 2009). Indeed, "the Supreme Court has never specifically held that a prosecutor's vouching for the credibility of a witness resulted in a denial of due process." *Wilson v. Bell*, 368 F. App'x 627, 632 n.3 (6th Cir. 2010). Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief in a witness's credibility or in a defendant's guilt must be flagrant and not isolated. *See United States v. Humphrey*, 287 F.3d 422, 433–34 (6th Cir. 2002),

*overruled on other grounds by United States v. Leachman*, 309 F.3d 377 (6th Cir. 2002).

The prosecutor did not argue that she had any special knowledge about the victim or the facts of the case that had not been presented to the jury. Although a prosecutor's repeated prefacing of her arguments with "I think" is not preferable, they do not rise to the level of prosecutorial misconduct because the comments were based on the evidence presented at trial and were isolated. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 332 (6th Cir. 2012). Moreover, any alleged vouching for the credibility of the victim did not rise to the level of a due-process violation, considering that judge instructed the jury both that the prosecutor's arguments were not evidence and of the factors to consider in evaluating the credibility of the witnesses' testimony. ECF No. 12-13 at PageID.1344-47. *Byrd v. Collins*, 209 F.3d 486, 537-38 (6th Cir. 2000). Petitioner therefore is not entitled to relief on his final claim.

## H. CERTIFICATE OF APPEALABILITY

The Court will also deny a certificate of appealability to Petitioner. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the

issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a).

The Court will deny Petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right. *See also Millender v. Adams*, 187 F. Supp. 2d at 880. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* FED. R. APP. P. 24(a).

\*     \*     \*

## IV. CONCLUSION

Accordingly, it is **ORDERED** that:

The Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED**;

The Motions to Appoint Counsel, ECF No. 7, to Expand Record, ECF No. 8, and for Evidentiary Hearing, ECF No. 9, are **DENIED**;

Petitioner is further **DENIED** a certificate of appealability and **DENIED** permission to appeal *in forma pauperis*.

*s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated:  8/28/2024

- 28 -